**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **ROBERTO CARLOS RUIZ,** *Plaintiff,* | § § | |
| **v.** | § § | **PE:25-CV-00047-DC-DF** |
| **DEVON ENERGY CORPORATION, et al.,** *Defendants.* | § § § § | |

**U.S. MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is Defendant Devon Energy Corporation's ("DEC") Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 9). After due consideration, the undersigned recommends that DEC's Motion be granted.

**BACKGROUND**

This case arises from a welding accident near the intersection of Highway 285 and FM 2119 in Pecos, Texas. (Doc. 1-2 at 3). Plaintiff Roberto Carlos Ruiz was working as a welder for Defendant KRT Inc. ("KRT") when the accident occurred. *Id.* at 3. Ruiz alleges that DEC and Defendant Devon Energy Production Company, L.P. ("DEPCO") exercised control over the job site and were responsible for keeping the premises safe. *Id.* at 4. When the accident occurred, Ruiz was cutting into a 12-inch pipeline to install a bypass line. *Id.* at 3. An explosion of fire erupted from the pipe and struck his face, right ear, and hand. *Id.* at 4. The blast carried enough force to blow off his welding glove and burn through his protective mask, resulting in severe burns to his face and hand. *Id.* at 4.

Ruiz filed this case against KRT, DEC, and DEPCO in the 143rd Judicial District Court of Reeves County, Texas. (Doc. 1 at 2). Ruiz brought claims for premises liability, negligence, gross negligence, and negligent supervision. (Doc. 1-2). Defendants removed the case to this Court on the basis of diversity jurisdiction. (Doc. 1 at 1). DEC filed the instant Motion to Dismiss for lack of personal jurisdiction. (Doc. 9). This matter has been fully briefed and is ripe for adjudication. (Docs. 12, 13).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) governs dismissal for lack of personal jurisdiction. The Court must resolve any issues involving personal jurisdiction before reaching the merits. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). If personal jurisdiction is challenged, the plaintiff has the burden of making a prima facie showing of the court's jurisdiction over the defendant. *Boyd v. Cleara, LLC,* No. 24-10609, 2025 WL 2082675, at *2 (5th Cir. July 24, 2025) (citing *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002)). The Court accepts as true all factual allegations in the complaint and any factual conflicts must be resolved in the plaintiff's favor. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).

## DISCUSSION

DEC moves to dismiss for lack of personal jurisdiction. There are two kinds of personal jurisdiction—general and specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Ruiz asserts that both forms of jurisdiction can be exercised over DEC, but requests jurisdictional discovery in the alternative should the Court find personal jurisdiction absent. The undersigned finds the Court cannot

exercise either form of personal jurisdiction over DEC and that Ruiz has not demonstrated his entitlement to jurisdictional discovery. DEC's Motion to Dismiss should therefore be granted.

## I. General Jurisdiction

Courts have general jurisdiction over a corporate defendant "where the corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State," the classic examples being the corporation's state of incorporation and principal place of business. *Diece-Lisa Indus. v. Disney Enters.*, 943 F.3d 239, 250 (5th Cir. 2019) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Here, Ruiz pled that DEC was incorporated in Delaware and that its principal place of business is in Oklahoma, rendering it at home in those states but not in Texas. (Doc. 1-2 at 2). Texas courts have also held that they lacked general jurisdiction over DEC. *Devon Energy Corp. v. Moreno*, No. 01-21-00084-CV, 2022 WL 547641, at *8–13 (Tex. App.—Houston [1st. Dist.] Feb. 24, 2022, no pet.); *Devon Energy Corp. v. Cormier*, No. 01-22-00921-CV, 2024 WL 4775785, at *10 (Tex. App.—Houston [1st Dist.] Nov. 14, 2024, no pet.). Thus, this Court cannot exercise general jurisdiction over DEC and DEC's Motion should be granted as to general jurisdiction.

## II. Specific Jurisdiction

Specific jurisdiction exists when "the suit arises out of or relates to the defendant's contacts with the forum." *Daimler*, 571 U.S. at 127. Ruiz's suit arises out of an injury he suffered while cutting into a pipeline as a welder for KRT at a jobsite in Pecos, Texas. (Doc. 1-2 at 3). Ruiz further alleged that KRT had been contracted by

"Defendants Devon" to perform the work at the job site where the injury occurred. *Id.* Ruiz defines "Defendants DEVON" as DEC and co-Defendant DEPCO. *Id.* at 2–3. This would mean that this suit arises out of DEC's contacts with Texas, because Ruiz suffered his injury while acting under DEC's directions at their jobsite. *Id.*

But DEC argues in its Motion that it did not contract with KRT to perform work at the jobsite, and that the work was instead performed for WPX Energy Entities ("WPX")—one of DEC's subsidiaries.[1] (Doc. 9 at 2). In his Response, Ruiz does not dispute that the well and pipeline where the injury occurred are owned by one of DEC's subsidiaries. (Doc. 12 at 12). Ruiz relies heavily on *Ford Motor Company v. Montana Eighth District Court* to argue there is no direct causation requirement for specific jurisdiction, meaning the accident need not have arisen directly from a DEC job site or Texas contact for the Court to have specific jurisdiction over it. (Doc. 12 at 12) (citing 592 U.S. 351 (2021)).

Ruiz is correct that *Ford* rejected a causation requirement for specific jurisdiction. 592 U.S. at 352 (holding that specific jurisdiction can exist without "proof that the plaintiff's claim came about because of the defendant's in-state conduct"). But it also made clear that the suit must still "*relate to* the defendant's contacts with the forum." *Id.*

---

1. DEC also points to two other Texas cases in which courts ruled that there was no specific jurisdiction over DEC through its subsidiaries to argue that the Court should reach the same result here. (Doc. 9 at 4) (citing *Moreno*, 2022 WL 547641, at *13; *Cormier*, 2024 WL 4775785, at *10). But both of those cases turned on the fact that the plaintiff's claims arose out of events that occurred in New Mexico, meaning there was no nexus between Texas as a forum, DEC, and the litigation. *Moreno*, 2022 WL 547641, at *7 (finding no specific jurisdiction because "the complained-of liability and injuries occurred in New Mexico, not in Texas"); *Cormier*, 2024 WL 4775785, at *6 ("The events giving rise to Cormier's claims against the Devon Entities occurred in New Mexico, and Cormier does not allege any facts creating a nexus between the forum, the defendant, and the litigation."). Ruiz alleges that the events occurred in Pecos, Texas, making *Moreno* and *Cormier* distinguishable. (Doc. 1-2 at 3).

(quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cty.*, 582 U.S. 255, 262 (2017)). "That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum. *Id.* The suit must still relate to an "'activity or occurrence' involving the defendant that takes place in the State." *Id.* (quoting *Bristol-Myers*, 582 U.S. at 264). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 582 U.S. at 264.

Specific jurisdiction existed in *Ford* because the suits involved car accidents in Ford vehicles (activities or occurrences involving the defendant) that had taken place in Minnesota and Montana (the forum states). 592 U.S. at 356. But here, there is no activity or occurrence that directly involved DEC and took place in Texas. Instead, Ruiz pled an activity or occurrence involving one of DEC's subsidiaries that took place in Texas; but the presumption in the Fifth Circuit—even after *Ford*—is that the presence and contacts of a subsidiary are not attributable to its parent company. *Conti 11. Container Schiffarts-GMBH & Co. KG M.S., MSC Flaminia v. MSC Mediterranean Shipping Co. S.A.*, 91 F.4th 789, 800 n.12 (5th Cir. 2024) ("Courts have long presumed the institutional independence of related corporations, *such as parent and subsidiary*, when determining [personal jurisdiction]." (emphasis added)).

"Generally, 'the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated.'" *Diece-Lisa*, 943 F.3d at 251

(quoting *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 346 (5th Cir. 2004)). The party asserting jurisdiction bears the burden of rebutting this presumption of institutional independence by presenting clear evidence beyond the mere existence of a corporate relationship between a resident and nonresident entity. *Id.* For this Court to have specific jurisdiction over DEC in this suit premised on the acts or omissions of DEC's subsidiary, there must be a strong enough affiliation between DEC and the subsidiary as to make the subsidiary's contacts attributable to DEC. *Conti*, 91 F.4th 800–01.

To determine whether corporations may be fused for jurisdictional purposes, courts use the *Hargrave* factors of: (1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the parent exercises complete control over the subsidiary's general policies or daily activities; and (5) whether the entities maintain separate accounting systems. *Id.* Ruiz does not mention any of the *Hargrave* factors in his Response. (Doc. 12). Nor does he cite a single case in which the acts of a subsidiary were attributed to their parent company for the purposes of personal jurisdiction. *Id.*

Ruiz argues that "DEC's integrated corporate structure means that its subsidiaries' activities are, in economic reality, DEC's activities." *Id.* at 12. But he does not provide any details as to what DEC's corporate structure is, let alone why it should result in the Court fusing DEC together with its subsidiaries for jurisdictional purposes. (Doc. 12). Ruiz instead relies primarily on DEC's public statements and filings where it

referred to itself and its subsidiaries as a "we" or collective unit. *Id.* at 5–7. But the Fifth Circuit has held that "website descriptions and SEC filings referring to a corporate parent and its subsidiaries as a single company, without more, [are] 'insufficient to overcome the presumption of corporate separateness.'" *Diece-Lisa*, 943 F.3d at 251 n.13 (quoting *Freudensprung*, 379 F.3d at 346).

Ruiz also refers to DEC and its subsidiaries in sweeping terms throughout his Complaint and Response, treating DEC's subsidiaries' contacts as if they were DEC's without presenting a real argument as to why they can be fused together. (Docs. 1; 12 at 12). This is insufficient; Ruiz cannot make generalized statements about a group of corporate units' contacts without differentiating between them. *Conti*, 91 F.4th at 801 (finding no minimum contacts where briefing treated subsidiary's contacts with forum as parent company's without differentiating between the two). The undersigned will therefore proceed by analyzing whether DEC and its subsidiary can be fused for jurisdictional purposes under the *Hargrave* factors.

As to the first factor, Ruiz presents no evidence related to DEC's stock ownership of WPX. (Doc. 12). Nor does he make any showing related to the second factor of whether the entities have separate headquarters, directors, and officers. *Id.* Ruiz rejects the third factor entirely, arguing "DEC cannot hide behind corporate formalities when the economic reality is that it profits from the operations that injured Plaintiff." *Id.* at 11. DEC can hide behind corporate formalities; Ruiz has the burden of showing they are not observed. *Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 331 (5th Cir. 2011) ("Where a parent and subsidiary observe corporate formalities, the plaintiff has a

heavy burden . . . to impute the subsidiary's jurisdictional contacts to the parent."); *Connie Norris v. Magnolia Water Utils. Operating Co.*, No. 26-163, 2026 WL 1649748, at * (E.D. La. June 8, 2026). Fourth, Ruiz offers only speculation as to the degree of control DEC exercises over its subsidiaries. (Doc. 12 at 14) ("DEC likely exercises sufficient control over its subsidiaries' Texas operations . . . ."). And finally, Ruiz does allege that DEC and its subsidiary consolidate their financial results. *Id.* But the presence of this factor alone should not result in DEC being fused with its subsidiary for jurisdictional purposes.

Accordingly, most of the *Hargrave* factors weigh against fusing DEC and its subsidiary for the purposes of specific jurisdiction. Ruiz therefore fails to meet his burden of making a prima facie showing of this Court's personal jurisdiction over DEC. DEC's Motion to Dismiss should be granted as to specific jurisdiction.

**III. Jurisdictional Discovery**

In the alternative, Ruiz requests jurisdictional discovery. To demonstrate entitlement to jurisdictional discovery, a plaintiff must make a preliminary showing of facts that reasonably suggest the existence of minimum contacts and "articulate a discrete discovery request that might cure the jurisdictional deficiency . . . ." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005); *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009). A plaintiff is not entitled to jurisdictional discovery when the record shows that the requested discovery is not likely to produce the facts needed to withstand a motion to dismiss. *See Freeman*, 556 F.3d at 342.

Ruiz argues that "[u]ntil Plaintiff has the opportunity to discover the actual relationship between DEC and its subsidiaries, this Court should not accept DEC's characterization [of independence] at face value." (Doc. 12 at 12). But the presumption in this Circuit is that a parent company and its subsidiary are independent corporate entities. *Conti*, 91 F.4th at 800 n.12. This Court is bound to follow that presumption—and thus DEC's characterization—until Ruiz makes a showing that suggests the opposite is true. *Diece-Lisa*, 943 F.3d at 251.

Ruiz has not done so. As discussed above, Ruiz largely failed to offer anything beyond public statements and SEC filings that refer to DEC and its subsidiaries as a collective unit. Although the undersigned is not ready to write off the possibility that DEC exercises a large amount of control over WPX or that the two do not observe corporate formalities, Ruiz did not make any showing on these issues as to open the door to jurisdictional discovery. He did not even mention the *Hargrave* factors, much less how his facts are relevant to them. Allowing jurisdictional discovery would be improper where it is apparent that the party seeking it is unaware of what he would have to demonstrate to survive a motion to dismiss. *See Freeman*, 556 F.3d at 342.

Ruiz also did not "articulate a discrete discovery request that might cure the jurisdictional deficiency . . . ." *Fielding*, 415 F.3d at 429. "A plaintiff seeking jurisdictional discovery is expected to identify with particularity the discovery sought, explain what information it expects to obtain, and explain how that information would support the assertion of personal jurisdiction; failure to do so warrants denial of leave to conduct the discovery." *ETS-Lindgren, Inc. v. MVG, Inc.*, No. A-15-CA-00456-SS, 2015 WL

6756186, at *5 (W.D. Tex. Nov. 4, 2015). Here, Ruiz identified the discovery sought in broad strokes without sufficient particularity. (Doc. 12 at 16) (identifying discovery of "information about DEC's internal corporate governance, its financial relationships with its subsidiaries, or its operational decision-making processes."). And he did not specifically articulate the information he expects to obtain or how it would cure the jurisdictional deficiency. Ordering jurisdictional discovery would therefore be improper.

The undersigned is sympathetic to the fact that "[t]his case involves a catastrophically injured worker seeking to hold accountable the company that ultimately profited from the operations where he was injured." *Id.* at 17. But this Court is bound to apply the law and hold Ruiz to his burden, a burden he—or more realistically his counsel—does not seem aware of. The doors of discovery should not open for a plaintiff who has failed to make a showing that reasonably suggests a defendant's minimum contacts, failed to cite a single case in which jurisdictional discovery was found appropriate, and failed to understand even the basic presumption of independence between parent and subsidiary corporations that has been the law in this Circuit for over 40 years. *Castillo v. Hands of Compassion Home Care, LLC*, No. MO:23-CV-00168-DC, 2024 WL 1081530, at *3 (W.D. Tex. Mar. 1, 2024) (Counts, J.) ("Plaintiff, in their legal research, should have uncovered the Fifth Circuit's clear admonition that "the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." (quoting *Hargrave v. Fibreboard Corp.*,

710 F.2d 1154, 1160 (5th Cir. 1983)). Ruiz's request for jurisdictional discovery should therefore be denied.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that DEC's Motion be **GRANTED**. (Doc. 9). Ruiz's claims against DEC should be **DISMISSED WITHOUT PREJUDICE**.

SIGNED this 18th day of June, 2026.

DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND RIGHT TO OBJECT

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation **by certified mail, return receipt requested**. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).